Good morning, your honors. May it please the court, my name is Kathy Warnick and I represent the people of the state of Illinois. This case comes before this court on this court's motion on a petition for rehearing for oral argument. The issue before this court is whether the trial court's decision to deny the defendant's standby counsel on the day when trial was proceeding, the jury was downstairs, witnesses were present, was an abuse of discretion such that it was erroneous. It is uncontested in this case that the defendant did not preserve this issue for review. Therefore, we find ourselves in plain error land. And on appeal, the defendant has only asserted second-pronged plain error. The defendant argued that he was denied a fundamentally fair trial. The law is clear that under second-pronged plain error, the defendant must show a clear and obvious error so fundamental that he was deprived of a fair trial. Now, it should be noted that the burden of persuasion is on the defendant. It's not this court's obligation or responsibility to meet that burden for the defendant. And on appeal, the defendant stated one line. Standby counsel would have been useful to Snowden in terms of helping him understand and challenge the state's evidence. There is no way that that single statement can meet the defendant's burden of persuasion in that matter. Let me ask you this. How about when you look in the record and you see that this man didn't know what he was doing during the course of this trial, and the judge was confused and gave reasons why he should not have standby counsel because of this confusion. How does a defendant receive a fair trial under those circumstances? Respectfully, as a matter of law, the alleged error in this case simply cannot meet second-pronged plain error. The Illinois Supreme Court has made crystal clear that there are limited classifications of structural error. The Illinois Supreme Court has... Well, wait a minute. Now, you're talking about structural error, but when you look at the second prong, it talks about integrity and the fairness of the trial. Certainly, structural error may fall into that category, but that doesn't make everything structural error under People v. Herron. People v. Herron was the threshold case in talking about plain error. However, after People v. Herron came People v. Glassburg, People v. Thompson, and People v. Washington. In all of those cases, the court described what they mean by second-pronged plain error. For second-pronged... ...wasn't part of the case. He didn't decide that case on structural error. In People v. Washington, no, that's correct. But the court did reaffirm that reversible error has been equated to structural error, and structural error is a very limited classification. There's seven types of structural error. Total denial of counsel, right to self-representation, a biased jury. But the thing that all of these classifications have in common is that there's a very limited classification of structural error. But the thing that all of these classifications have in common is that they fundamentally, they destroy the framework of the trial. It's been described as systemic. It's been described as trials where we can't really trust the result, no matter how much evidence there is against the defendant, because the framework of the system is somehow flawed. That simply is not the case here. The defendant has no right to standby counsel. In Feretta, it was recognized that he has a right to go pro se. In McCaskill, the defendant kept changing his mind, and the court said, yes, a trial court can't appoint standby counsel over objection. But the important thing about McCaskill is that the United States Supreme Court said that the defendant has no right to dual representation. So because the defendant has no right to standby counsel, there is no way in this case that the mere denial of standby counsel destroyed the framework of the trial. The defendant still had a fair trial. So you're telling me under no circumstances does a defendant have a right to standby counsel? That's not what I'm saying. I'm saying the defendant doesn't have a constitutional right. Well, maybe that is what I'm saying. Is that what you're saying or not? A defendant does not have a constitutional right to standby counsel, but a trial judge may appoint him to standby counsel at his discretion. Well, here, let me give you an example. If a defendant wants to get a piece of paper into evidence that would absolve him of the crime, and he doesn't know how to get it into evidence, and he asks the judge, judge, I need help, and the judge is confused and doesn't give him standby counsel, that piece of evidence never gets to the trier of the fact, are you telling me that the conviction should stand? Under second-pronged plain error, absolutely so. Okay. And this court, this very court Is there any example of that occurring in this trial? Is there any example on the record that shows that the defendant tried to get a piece of evidence in that didn't get in or failed to object to something that he should have objected to? There's none of those examples. The only thing they're complaining about here is that the guy stood up and said, I don't have a defense, right? That's correct. That's correct. And interestingly And if he had a lawyer, would the lawyer allow him to say that, that he had no defense to the jury? It could very well be that it was a very tactical ploy by the defendant to get the sympathy of the jury. I mean, how Well, how do you get sympathy when you say, hey, I have no defense? I mean, isn't the first thing a lawyer tells the client, don't talk? If you have a defense Don't say anything Well, if you have a defense, but it didn't look like this guy had a defense. So maybe appealing to the sympathy. Oh, me, I'm the poor defendant. I'm just here. I'm not ready to go to trial. I don't have a lawyer. That's a trial strategy, too. And Gibson actually predated, you know, all of these other plain error cases. And the interesting thing about Gibson is, first of all, it's a death penalty case. And in Gibson, it was shown that the defendant did try to introduce evidence, and that he couldn't get in the evidence, and the state conceded that the foundation for some other evidence was lacking. So perhaps, you know, perhaps Gibson would be decided differently today. But the defendant is only asserting second-pronged plain error. Again, the Illinois Supreme Court has been crystal clear. This court is bound to follow the dictate of the Illinois Supreme Court, and there is simply no plain error in this case. With regard to Your Honor's questions about the defendant saying, oh, I have no defense, truly, in a second-pronged plain error analysis, there's no place for prejudice. The unique thing about second-pronged plain error is that you don't even make a prejudice analysis, because the framework is so fundamentally flawed that there would be no prejudice. And that makes sense, because we certainly couldn't allow the defendant to change the framework, and we couldn't allow the defendant to sabotage his own trial. In effect, what would happen is that the defendant would then be creating reversible error. He can go to court, say something. He could do nothing. And then this court could look at his performance at trial and say somehow that damaged the framework of the system. It just doesn't work that way. Under a second-pronged plain error analysis, this case simply must be affirmed. More than that, there was no error in this case. This judge, the defendant had been in court 30 times. Judge Judy had seen the defendant 23 times. The defendant gave numerous continuances. It was a simple case. It was not complex. The defendant was well-versed with the criminal court system. If you go through the record and you look at the defendant's comments, the defendant was trying to broker with the court a deal. He was trying to get his case reduced from one class to another class so he could get probation. And at the end of the day, I understand that this court recognized some errors of fact, but those errors of fact weren't the reason that standby counsel was denied. The defendant was not entitled to standby counsel, and the trial judge's denial of standby counsel was not an abuse of discretion in this case. I would just ask for a few moments of rebuttal. Thank you. Good morning. May it please the court, my name is Debra Nall. I represent the respondent, Stephen Snowden. The error in this case was the court's arbitrary ruling that was based on a misapprehension of what actually had happened. This ruling affected the fairness of Mr. Snowden's trial and challenged the integrity of the trial. Well, it affected the fairness of his trial and it also affected the integrity of the judicial process. It affected his trial because when you have an arbitrary ruling like this, there's no way to trust that everything happened, that justice was served. Do you think that this was a miscarriage of justice? Justice Fitzgerald, when he talked about plain error, he said the purpose of the plain error rule is to prevent miscarriages of justice and to protect integrity and reputation of the court system. So my question to you is, is this a miscarriage of justice? You've got a guy who desperately wanted to plead guilty and on several occasions tried to plead guilty but couldn't get the deal that he wanted. And so he wound up going to trial and so the guy who desperately wanted to plead guilty was found guilty. How is that a miscarriage of justice? It's a miscarriage of justice for a couple of reasons. Number one, the ruling was based on a misapprehension of the evidence. So we don't know. This was a completely arbitrary ruling. That, in our entire system of justice, is a miscarriage of justice. If the public is looking at this and thinking, oh, we have a court that knows what they're doing. I think the term miscarriage of justice denotes whether the result was a miscarriage of justice. Is the result in this case a miscarriage of justice? The guy who wanted to plead guilty is guilty. Yes, Your Honor. The second reason is because, as this Court recognized in its decision, my client, once he recognized that the arbitrary ruling in his case, there was no point anymore. He just gave up. And he said, yes, I have no defense. Well, what was his defense? His defense was that it's the state's burden to prove him guilty beyond a reasonable doubt. He doesn't have to. And you don't think they did that? I don't think that's the question in this case. Go ahead. The question in this case is whether the error rose to the level of plain error under the second prompt, whether it affected the fairness of the trial and challenged the integrity of the judicial process. Okay. The issue is whether it rises to the level of plain error. Exactly. Okay. Exactly. And as this Court found, it does. The second prompt of the plain error doctrine may encompass structural errors, but plain error is not limited to just structural errors. The two doctrines are just fundamentally different. The second prompt of the plain error rule requires the Court to go through and examine errors on a case-by-case basis. Well, doesn't the second prompt presume prejudice? And if it presumes prejudice, isn't that the exact opposite of a case-by-case analysis? Don't you say in a second prompt analysis, don't you say a fundamental right has been denied here, and therefore we don't even need to look to see if there's prejudice? And so if you have to fall back and look to see if there was prejudice, aren't you slipping back into a first prompt analysis? No, Your Honor. The prejudice has to do with the facts, so if the facts are closely balanced. Closely balanced is in the first prompt. Right. So let's stay in the second prompt. Okay. What fundamental right was your client denied so that we should presume that he was prejudiced? Does he have a fundamental right to have standby counsel? No, Your Honor, but he has a fundamental right to be able to trust that the Court's making a ruling based on an accurate recollection of the evidence. Actually, you're saying really that the fundamental right is the fairness of the trial. Exactly, Your Honor. Exactly. And the question really to look at here is did this man receive a fair trial? Exactly. And can we trust this process? The Court in Thompson said that automatic reversal is only required when there's structural error. But automatic reversal isn't the same thing as reversible error under the Plain Error Doctrine. The Plain Error Doctrine, if you look at Thompson, there's no need for separate analyses if they're the same. So first we have the structural error analysis. There was no structural error in that case because 431B error isn't a structural error. So the Court then proceeded to analyze it under Plain Error and determined that in that case there was no Plain Error because the defendant didn't show that the jury was actually biased. Well, are you telling us in this case that there's structural error, or do you really need structural error? You don't need structural error. I don't believe this was a structural error, and I don't think there's really any argument about this. It talks about integrity and the fairness of trial, doesn't it? Exactly. Structural error would fall into that category, but it doesn't make it structural error. Correct. Exactly. Well, did the judge's ruling cause this defendant to not have a fair trial, or did he just bring this on himself? I believe that the Court's ruling caused him not to have a fair trial. Well, what's the role of standby counsel? The role of standby counsel is really up to the trial court. The trial court has broad discretion to determine. Well, doesn't the case law tell us that the role of standby counsel is somewhat narrowly defined? Because under the Supreme Court's case, if standby counsel goes too far and does too much, then standby counsel is infringing upon the right of the defendant to represent himself. So in Gibson, the Court said, well, standby counsel should help get things into evidence, help defendants lay foundations for exhibits, make the appropriate objections. Thank you, Justice Lampkin. Make the appropriate objections when inadmissible evidence is coming to the Court. But does it say anywhere in Gibson that standby counsel is supposed to cross-examine witnesses and make opening statements? It doesn't say that, does it? No, it does not. So what do you have in the record to show us, other than mere speculation, that the presence of standby counsel would have stopped your client from saying the things that he said during his opening statement? I don't think there's any way to show something in the record that didn't happen. So it's just speculation. And in fact, if the defendant wanted to say it and standby counsel told him not to, he could still say it. Isn't that right? I don't think I understand your question. Standby counsel can't stop a defendant from doing anything, can he? Because it's just standby counsel. And if a defendant wants to get up and say what he wants to say, he has a right to do it because he's representing himself pro se. And you can't stop him from doing that. And so if he wants to stand up and say, I have no defense, that's up to him. And to say that standby counsel sitting there would have said, listen, before you get up, don't say this, and he would have listened to standby counsel, that's mere speculation, isn't it? Is there something in the record that would support that? I think the question in this case really is not about what standby counsel would or would not have done. I think, first of all, the trial court does have broad discretion to allow standby counsel to have a larger role than, you know, I think is typically considered. And that's People v. Red, 173L2D1, 1996. But the important thing here is the fact that we can't trust in this what happens here because of the arbitrary ruling. And that's exactly what the second prong of the plain error rule is designed to address. If we look at People v. Johnson, the prosecutorial misconduct case, it was an arbitrary ruling. So that's the reason why it rose to the level of plain error. Are you talking about D'Angelo Johnson? D'Angelo Johnson. That was a culmination of many errors, wasn't it? That's kind of a case that kind of stands on its own, isn't it? Well, then we also look at People v. Lewis, which followed Johnson, 234L2D32, 2009. But the Supreme Court relied on Johnson to say that when the trial court erred by imposing a street value fine without evidence of the value of the controlled substance, that rose to the level of the second prong of the plain error test because the integrity of the judicial process is affected when the decision appears to be arbitrary. So, again, we have – it's not just structural errors. It's errors that make us question the integrity of the process. Structural errors are errors that require automatic reversal regardless of the facts of the case. The plain error doctrine allows this court to, the reviewing court, to correct forfeited errors that challenge the integrity of the process, that undermine the fairness of the trial, but may not be a structural error. So in this case, counsel's correct. The denial of standby counsel isn't always going to be an error. It isn't always going to be reversible. I hope, frankly, that it never happens again, that this circumstance is so unique. But in this case, we have a situation where the court simply, for whatever reason, no one knew what happened. The court ended up ruling based on a profound misunderstanding of the facts. That undermines the integrity of the process. It affected the fairness of my client's trial. This court correctly ruled that that is plain error under the second prong. What was the – what do you say that the profound misunderstanding was? The profound – That he had – I'm sorry, go ahead. The profound misunderstanding was that Mr. Snowden had told the court that he did not want this attorney to represent him. Then he went – Why is that so material? Why is that so profound? Didn't it happen something like seven months prior to the trial? It happened before the trial. Many months before the trial. Correct. So what's the big deal? The big deal is that the trial court then relied on a misrepresentation and said that he didn't actually say what he had said in denying standby counsel. Go ahead. So we have a – yeah, I mean, we have a situation where this court correctly ruled that the fairness of the trial and the integrity of the judicial process are undermined by this error, that the error prejudiced my client because he was denied a fair trial where he didn't present a defense because he simply gave up and you can tie one directly to the other. And for this reason, I ask that this court deny rehearing, reverse, and remand for a new trial. Unless you have any other questions. Thank you. Just very briefly, D'Angelo Johnson is an entirely different animal. In D'Angelo Johnson, there was a combined and cumulative amount of trial errors which the court found was the same as structural error. If you look at the language of Johnson, it says that we find that the errors were so great that it affected the framework of the defendant's trial. So it was akin to a structural error because regardless of the nature of the evidence, the Illinois Supreme Court believed that the result of the trial was not reliable. In People v. Thompson, there was no two-prong analysis. The analysis is, is there structural error? The only reason that there was a discussion of whether the jury was biased is because if the defendant could have established that it was a biased jury, it would have been one of the structural errors that has been enumerated by the Illinois Supreme Court. It makes no sense that you can always have second-pronged plain error if somehow it is felt the defendant has been deprived of a fair trial or a fundamentally fair trial in some rather ambiguous manner. Because if that were the case, it would be unnecessary for the United States Supreme Court and the Illinois Supreme Court to define what structural error is and to limit it to those classification of cases. It would render that language in that direction meaningless. Therefore, in this case, there cannot possibly be second-pronged plain error. There was no error, and the people would ask that this Court affirm the defendant's objection. You know, I've been wrestling with this one concept. If you take into account that under a second-pronged analysis, you presume prejudice, then if you have a situation where a judge's ruling would sometimes be correct and would sometimes not be correct, how can you presume prejudice? I mean, I just don't see how those two can go together. And so if you accept the fact that this is a discretionary call, although I stand by my statement and my defense and my dissent that it's never been overruled or reversed on this grounds, but if you accept the fact that it's a discretionary call and sometimes a judge will be right and sometimes a judge will be wrong, how can you say that the denial in one case is the denial of a fundamental right and therefore you have to presume prejudice? The two don't go together. They don't go together, and because the defendant has no right to stand by counsel, the people's position would be that it can't be error. I mean, as long as the judge knows he has the discretion and a judge applies the discretion, whether he gives it to him or not is a matter of courtroom management, which has been recognized by the case in New York. But it doesn't work with a plain error analysis. But here, clearly, under second-pronged plain error, it just simply does not fall within one of those classes. It can't be plain error, and it wasn't error. One more thing. What counsel for defendants says, or said to us, that the fact that Judge Doody was given misinformation, that that challenges the integrity of the process. It doesn't have to. I'd ask you to comment on that. Our position is that it's immaterial to the issue at hand of stand-by counsel. The judge's statements, whether they're interpreted as being accurate or inaccurate, were statements that were in the process of the defendant deciding either to go pro se or to have an attorney. At the end of the day, what's relevant in deciding on stand-by counsel is the factors enumerated in Gibson, which is the three factors, complexity, seriousness, and experience with the trial system. And there is no way to link those comments. Even if you assume that those comments are misinterpretations of the facts, there is no way to link those comments with the trial judge's ultimate decision. I think we have to give the trial judge the benefit of the doubt. He spent a lot of time with his defendant. The defendant asked for stand-by counsel literally while the sheriff was going down to get the jury. And at that time, certainly, it's clear that any learned trial judge would deny the defendant stand-by counsel. So we would ask that the defendant's convictions be affirmed. Thank you. Thank you. Thank you, counsel.